UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENT MICHAEL MARINO, : | CIVIL ACTION NO. 3:20-1456 |
| Petitioner : | |
| v. : | (JUDGE MANNION) |
| WARDEN HOWARD, : | |
| Respondent : | |

### MEMORANDUM

Vincent Michael Marino, an inmate currently confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, filed the above captioned petition for writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1). Marino challenges two prison disciplinary actions he received while confined at the Federal Correctional Institution, Fort Dix, ("FCI-Fort Dix"), New Jersey. Id. For relief, Petitioner seeks the following: (1) a DHO rehearing; (2) restoration of his good conduct time and commissary privileges; (3) a district court order for alleged "exculpatory material evidence" to be turned over to Marino; or (4) for the court to review the alleged exculpatory evidence. Id. A response (Doc. 18) and traverse (Doc. 25) having been filed, the petition is ripe for disposition. For the reasons that follow, the Court will deny the petition for writ of habeas corpus.

## I. Factual Background

### a. Incident Report No. 3254662

On May 9, 2019, at approximately 5:12 p.m., while confined at FCI-Fort Dix, W. Decker, delivered Incident Report No. 3254662 to Marino, charging him with Possession of a hazardous tool, a Code 108 violation. (Doc. 1 at 10, Incident Report). The incident report reads as follows:

> On 05/09/2019 at approximately 10:00 am while doing a room inspection in room 319, upon searching secured locker 4 lower, on the bottom shelf where it appeared storage for yellow folders or legal mail, I searched what appeared to be legal mail belonging to inmate Marino, Vincent reg#14431-038 and one black LG smart phone located inside the yellow folder retaining legal mail.

Id.

On May 13, 2019, Petitioner appeared before the Unit Discipline Committee ("UDC"), during which time he was provided with a copy of Inmate Rights at Discipline Hearing, and the Incident Report was referred by the UDC to the Discipline Hearing Officer ("DHO") for a hearing. (See Doc. 1 at 13, Inmate Rights at Discipline Hearing).

On May 30, 2019, Marino appeared for a hearing before DHO, N Mullins. (Doc. 18-1 at 21-23). The DHO confirmed that Petitioner understood his rights. Id. At the onset of the hearing it was noted that although Petitioner

requested staff representative A. Gibbs, she no longer works at FCI-Fort Dix and R. Gilyard appeared telephonically as Petitioner's staff representative. Id. Petitioner's summary of his statement made before the DHO is as follows:

> Inmate appeared in this hearing and he has received a copy of the incident report. Inmate stated that he understands the rights before the DHO and the charges against him. He raised no issues about the disciplinary process. Inmate Marino denied Possession of a Hazardous Tool (Cellular Phone) stating, I was called to medical, and I left my locker open; someone else must have put the cell phone in my locker.

Id. Three witnesses were called on Petitioner's behalf, making the following statements:

> 1. [S]omeone was standing by his locker when I walked by his room; he usually locks his locker; it was a black guy about 6'2, but I don't know who it is.
>
> 2. I was at work that day; I wasn't there when the incident happened; when he is not there, he usually locks his locker.
>
> 3. I had heard something about someone planting something on his days prior, but I don't know who told me or who it was.

Id.

The DHO found Petitioner guilty of Code 108, Possession of a Hazardous Tool (Cellular Phone), after reviewing the Incident Report, Investigative Report, Chain of Custody Log, dated May 9, 2019 and Photo Sheet depicting the contraband. Id. at 22. The DHO sanctioned Petitioner on

the Code 108 violation with disallowance of forty (40) days GCT, fifty-four (54) days forfeiture of Non Vested Good Conduct Time, twelve (12) months loss of commissary and email privileges. Id. at 23.

> The DHO stated the reason for the sanction taken as follows:
>
> The DHO considered that cellular phones are considered sensitive equipment. Cellular phones are a hazardous tool. The action on the part of any inmate to possess an accessory for a hazardous tool, (cellular phone) in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and security for staff, inmates, and the general public as whole. Possessing a cellular phone gives an inmate an opportunity to make completely unmonitored calls. These calls can contain threats to the general public or plans for an escape attempt or planning or participating in the other illegal activity. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.
>
> The sanction involving the loss of Good Conduct Time was imposed to comply with the mandatory sanction requirement. The sanction involving the forfeiture on Non Vested Good Conduct Time was imposed to deter future misconduct. The sanctions involving the loss of Commissary and Email privileges are meant to demonstrate the seriousness of this offense to you as well as everyone incarcerated at this facility.

Id. at 23.

Marino was advised of his appeal rights at the conclusion of the hearing. Id. Petitioner received a copy of the DHO report on November 1, 2109. Id.

### b. Incident Report No. 3256785

On May 15, 2019 at approximately 5:40 p.m., W. Decker, delivered Incident Report No. 3256785 to Marino, charging him with Possession of a Sharpened Instrument, a Code 104 violation. (Doc. 1 at 11, Incident Report). The incident report reads as follows:

> On 5/15/19 at approximately 2:00 pm I Officer McNair was the unit officer in unit 5803. While monitoring a recall move, I conducted a pat search of inmate MARINO, Vincent reg number 14431-038. After the pat search was completed inmate MARINO placed his shirt on the ground in front of him. As MARINO placed his shirt on the ground, I saw three metallic objects fall out of MARINO'S shirt. I retrieved the objects and determined they were a metal nail with a sharp point, a metal socket, and a metal bolt. I realized the three objects could be fastened together to make a weapon. The bolt screwed into the socket which secured the sharp nail creating an approximate 6-inch weapon. I then realized that MARINO was in possession of a sharpened instrument. MARINO was placed in hand restraints and escorted to medical to be assessed.

Id.

On May 17, 2019, Petitioner appeared before the Unit Discipline Committee ("UDC"), during which time he was provided with a copy of Inmate

- 5 -

Rights at Discipline Hearing, and the Incident Report was referred by the UDC to the Discipline Hearing Officer ("DHO") for a hearing. (See Doc. 18-1 at 24).

On May 30, 2019, Marino appeared for a hearing before DHO, N Mullins. (Doc. 18-1 at 24-26). The DHO confirmed that Petitioner understood his rights. Id. At the onset of the hearing it was noted that Petitioner requested staff representative and R. Gilyard met with Marino prior to the hearing. Id. R. Gilyard did not make a statement regarding the incident. Id. Petitioner's summary of his statement made before the DHO is as follows:

> Inmate appeared in this hearing and he has received a copy of the incident report. Inmate stated that he understands the rights before the DHO and the charges against him. He raised no issues about the disciplinary process. Inmate Marino denied Possession of a Weapon, stating, the C.O. did pat search me, but the items were in my pocket not my shirt; I did not put these items in my pocket someone else must have.

Id. One witness was called on Petitioner's behalf and made the following statement:

> "I was in SHU on May 15, 2019; I know Vinny and he has a lot of people that don't like him, some white guy with tattoos said he doesn't like Vinny and said I am going to get him, but I don't know if anyone put anything in his clothes."

Id.

The DHO found Petitioner guilty of Code 104, Possession of a Weapon, after reviewing the Incident Report, Investigative Report, a Memorandum from Counselor L. Batiste, dated May 15, 2019, Chain of Custody Log, dated May 9, 2019 and Photo Sheet depicting the contraband. Id. at 25. The DHO sanctioned Petitioner on the Code 104 violation with disallowance of forty (40) days GCT, and twelve (12) months loss of commissary and visiting privileges. Id. at 26.

The DHO stated the reason for the sanction taken as follows:

> The action/behavior on the part of any inmate to possess any type of weapon capable of inflicting serious injury to another person, whether another inmate or staff member, threatens the health, safety, and welfare of not only the inmate involved but that of other inmates and staff. In the past, this type of action/behavior has been shown to result in serious injuries, even death; and the serious loss of property. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times.
>
> The sanction involving the loss of Good Conduct Time was imposed to comply with the mandatory sanction requirement. The sanctions involving the loss of Commissary and Visiting privileges are meant to demonstrate the seriousness of this offense to you as well as everyone incarcerated at this facility.

Id. at 26.

Marino was advised of his appeal rights at the conclusion of the hearing. Id. Petitioner received a copy of the DHO report on November 1, 2109. Id.

## II.   Discussion

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance

written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, *et seq*. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at

§541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must

provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Marino was afforded all of the required procedural rights set forth in Wolff. He received written notice of the disciplinary charges at least twenty-four hours prior to both hearings; he appeared at the hearings and made statements refuting the charges; he was given the right to a staff representative, an opportunity to present witnesses and provide documentary evidence; and he was given written statements explaining the DHO's decision in both hearings. See Wolff, 418 U.S. at 564–66.

Petitioner's remaining claims challenge the sufficiency of the evidence used to support the DHO's decisions and the adequacy of the appeal process to challenge the DHO's evidence. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992).

If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457. In Hill, the Supreme Court described the "some evidence" standard as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56.

Marino "makes a claim of actual innocence" regarding his possession of the cellphone and weapon, and states that he "has not had an unobstructed procedural shot at presenting this claim." (Doc. 1 at 5). Specifically, Marino states that, on June 30, 2019, a month after his DHO hearing, inmate R. spoke to a BOP lieutenant in front of a cell on the special housing unit (SHU) at FCI Fort Dix. Id. at 6-7. According to Marino, an inmate confessed to the lieutenant that he planted the cellphone and weapon on Marino. Id. at 6. Marino believes that the lieutenant took down notes of his conversation with the inmate and that the conversation was captured by cameras in the SHU. Id. at 6-8. Marino further claims that the lieutenant then

emailed another lieutenant with the BOP's special investigative services (SIS) regarding the conversation with the inmate. Id. at 7. Finally, Marino alleges that a case manager who was part of Marino 's unit discipline committee (UDC) was sleeping with inmates and trafficking heroin into FCI Fort Dix at the time of Marino 's UDC hearings. Id. at 8.

Accordingly, Marino argues that the BOP "committed reversible legal error" in multiple ways. First, Marino believes that BOP staff handling his DHO appeals did not properly investigate his claims regarding the identified inmate's alleged confession to the lieutenant. Id. at 6-8. Second, he alleges that the inmate's testimony was not allowed at his original DHO hearings. Id. at 7. Finally, he argues that he should have received copies of his purported evidence, namely: the lieutenant's notes from his conversation with the inmate; video of the conversation; the lieutenant's email to SIS; and "discovery" regarding the case manager's alleged crimes. Id. at 8

The record before this Court completely belies Petitioner's claims.

Initially, the Court notes that Marino's claim regarding "newly discovered evidence" of "video live footage" filmed on June 30, 2019, in which an inmate confesses to SIS Lt. Salazar that he "planted both the cell phone and 2-inch nail on Marino," (Doc. 1 at 7), was presented by Petitioner

- 13 -

in his Regional Administrative Remedy Appeal as a Due Process denial of Petitioner being "prevented from presenting documentary evidence affidavit" and "to call witnesses" at his "UDC & DHO" hearings, that both "cell-phone & knife" were planted in Petitioner's cell." (Doc. 1 at 20-25). Attached to Petitioner's appeals is a copy of a May 16, 2019 Affidavit of the alleged exculpatory documentary evidence discussed in the June 30, 2019 video footage. (Doc. 1 at 15). Thus, it appears that the exculpatory affidavit existed at the time of Petitioner's May 30, 2019 disciplinary hearings. Although in existence at the time of the hearings, there is no record of Petitioner requesting that this exculpatory affidavit be admitted into evidence or that any witness he requested to attest to this affidavit or evidence contained therein was denied.

Moreover, Petitioner's challenge to this exculpatory evidence was considered on appeal and denied as follows:

> You appeal the May 30, 2019, decision of the Discipline Hearing Officer (DHO) regarding incident report #3254662, in which you were found to have committed the prohibited act of Code 108, Possession of a Hazardous Tool (Cellphone). You further contend the DHO held another job title at your previous institution which indicates bias and a conflict of interest. You further allege you were denied a review of exculpatory evidence to include camera evidence. You further contest the DHO report being

delivered late. For relief, you request the incident report be expunged.

Our review of the disciplinary proceedings indicates compliance with Program Statement 5270.09, <u>Inmate Discipline Program</u>, and we concur with the response provided by the Regional Director. The DHO's decision was based upon the evidence detailed in Section V of the DHO report. We find the determination of the DHO is reasonable and supported by the evidence. In addition to the Admission and Orientation Handbook, Program Statement 5270.09 provides that inmates are responsible to keep their area free of contraband. Ownership of the item or whether it "belonged" to you is not the issue in this matter. Your possession is the issue, and the cellphone was located in an area in which you were assigned and to which you had access to. Accordingly, it is appropriate to support the charge as stated. Your Due Process rights were upheld during the discipline process. The DHO report states you raised no Due Process or evidentiary issues at the onset of the DHO hearing and you were appointed a staff representative. The sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy.

Although you contend the DHO had collateral duties at your previous institution and therefore could not be impartial in this matter, we find the DHO in this case was not a victim, witness, investigator, or otherwise significantly involved in the incident. We do not find any evidence to suggest the DHO was not impartial during this disciplinary proceeding.

P.S. 5270.09, also states the DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 15 days of the DHO decision. Although there was a delay in providing you with a copy of the DHO report within the 15-day period, we find you were not adversely affected. The time frame for appealing a DHO decision starts from the date you receive the written notice

of the decision. Notably, you were able to exercise your appeal rights as is evident with this appeal.

(Doc. 1 at 29, Response). Marino's administrative appeal regarding incident report #3256785, Possession of a Weapon, Code 104, was also denied, finding that the DHO's decision was reasonable and supported by the evidence. (Doc. 1 at 26, Response).

BOP Prohibited Act 108 precludes possession of a hazardous tool, including a cellphone. 28 C.F.R. §541.3 Table 1. The regulation does not require ownership or even use of a cellphone for violation of the Code. See also BOP P.S. 5270.09, Table 1. Thus, Petitioner's challenge to the sufficiency of the evidence relief upon by the DHO is denied because there is sufficient evidence to establish Petitioner possessed the cellphone or the weapon, and even if there existed an affidavit showing Petitioner did not own or even use the cellphone or weapon, the affidavit would not exonerate him. See e.g., Denny v. Schultz, 708 F.3d 140, 147 (3d Cir. 2013) ("it is undisputed that two homemade shanks were found in a space accessible from within Denny's cell. This evidence, by itself, constitutes "some evidence" that Denny possessed the weapons in question"). As such, the DHO's decision clearly meets the due process requirement of being

supported by "some evidence in the record" under Hill. See Sinde v. Gerlinski, 252 F.Supp.2d 144, 150 (M.D. Pa. 2003) ("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff") (quoting Hill, 472 U.S. at 457).

The Court further finds that the Code 108 sanctions of disallowance of forty (40) days GCT, fifty-four (54) days forfeiture of Non Vested Good Conduct Time, twelve (12) months loss of commissary and email privileges, and the Code 104 sanctions of disallowance of forty (40) days GCT and twelve (12) months loss of commissary and visiting privileges imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of two 100 severity level prohibited acts. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 100-level offenses:

> A. Recommend parole date rescission or retardation.
> B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
> B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
> C. Disciplinary segregation (up to 12 months)
> D. Make monetary restitution.
> E. Monetary fine.

F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

### III. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: January 6, 2022**
20-1456-01